COMMONWEALTH *v.* C. ALEXANDER AND A. SCOTT.

[Libel on W. B. Storm, Daily Chronicle, August 20, A. D. 1844.]

ON binding the defendants over for trial, the RE-CORDER said:

The present charge against the defendants consists of two allegations. First, that they are the editors or publishers, or both, of a daily newspaper printed and published in this city, known and styled "The Daily Chronicle;" and second, that as the editors or publishers as aforesaid, they did maliciously and wilfully print, utter and publish, in the said newspaper, of date the 20th day of August, A. D. 1844, a false, scandalous and malicious libel on one William B. Storm, in words following, to wit:

"*Tylerism in trouble.—Charge of false pretences.*— Mr. William B. Storm, (a clerk in the custom house) recently held to bail to answer at the criminal court, on the charge of obtaining a $1000 note under false pretences, has applied to be brought before judge King on a writ of habeas corpus. The result has not yet transpired. Mr. Storm has engaged captain Robert Tyler to defend him. This we believe, is the first fee that the celebrated repeal orator has received since his admission to our bar. Our attorney-general must look out for captain Bob and so shall we, for we expect a rare day's sport when they enter the lists. The financiering qualities of the defendant were once known to

the community when he was cashier of the celebrated and exploded Towanda bank. In addition to the captain's son, Mr. Storm has also engaged William A. Porter, esq., to aid him; so we shall have the pillars of the national and state governments to bear up one of the Towanda Rothchilds."

The defendants deny that there has been sufficient, or competent proof advanced by the prosecution, that they are either the editors or the publishers of the said newspaper; and second, if such proof be deemed sufficient, then the article or publication referred to as subject matter of this charge, is no libel—because it is, as it purports to be, a narrative of legal proceedings before a court of record of the city and county of Philadelphia, and that all such narratives or reports of like proceedings are privileged communications. In support of the first ingredient of this charge, is the evidence of John M'Grath, that he bought a paper containing the alleged libel of Mr. Scott—of Mr. Storm's, that in his conversation with Mr. Scott, he (Scott) referred to Mr. Alexander as knowing about the publication, and fixing a time when Mr. Alexander would be at the office to be inquired of concerning the same; of Mr. Riley, that he had business relations with the "Daily Chronicle," and had taken receipts for money paid, signed by Mr. Scott in the name of the firm, Alexander & Scott; which together with the fact as appears on the face of the paper itself, that it is edited and published by "C. Alexander & A. Scott," leaves on my mind no doubt whatever that the defendants are the editors and publishers of the paper containing the alleged libel. The proof on this point, uncontradicted as it is by evidence

of any kind, is clear, so clear that it is all sufficient to sustain civil proceedings against the parties, in a civil suit at law, for debt, damages, and the like, and equally so to render the same parties liable to a criminal charge for libel. In regard to the second part of this charge, there is some doubt; a doubt if the publication complained against, be a technical libel. The well known definition of a libel, that it is a malicious defamation of any person made public, by either printing, writing, signs, or pictures, in order to provoke him to wrath or expose him to public hatred, contempt or ridicule, has neither lost nor gained any characteristic, since it was engrafted on the criminal code. To be a libel, it must be published with a malicious intent to do injury, and as a consequence, endanger the public peace by its excitement to revenge, or retaliation, or outrage.

The publication is a matter of fact, and in this case is proved—the intent and the effect are subjects for judicial decision in a primary hearing—and at the trial, matters to be judged of by a jury, under the legal advice of the court. They are matters for judicial decision at a primary hearing, because, if the magistrate is of opinion that the alleged libel is either a "privileged communication," or does not come within the legal definition of the offence, he is bound so to decide, and discharge the accused. The publication in the present instance having been disposed of, it remains to be determined if the article in the "Daily Chronicle," is a privileged communication.

It appears that the weight of the English decisions is in favour of the exemption from prosecutions for libel, of publications of actual proceedings of courts of

justice, where such publications do not tend to the injury of the public morals; although it has been held by lord Ellenborough, and justice Bayley, and others, that such publications are liable to "great limitations." I refer to the following authorities on these points: 1 Russell on Crimes 213; 2 Mod. 118; 1 Bos. & Pull. 525; 8 T. R. 298; Eng. Com. Law Rep., vol. 10, 380; same 179; same 190; 5 Esp. 123; 1 M. & S. 281; Holt on Libel 190; Starkie 211. I think it may be held as good law, that the actual report of judicial proceedings, which are proper for the public to know, and which do not improperly affect the ends of justice, can and may be published, and exempt the person or persons so publishing the same, from prosecution for libel. This rule refers to all proceedings of a judicial nature, and consequently and necessarily includes the proceedings before a magistrate, alderman, or justice of the peace— for all such proceedings are judicial in their nature. There are exceptions, however, to this last class of proceedings, and one of these exceptions refers to "ex parte depositions" before justices: to publish which when the person charged is not present, and cannot be heard, is considered so injurious, as to be libellous; although it be an accurate report of the depositions or ex parte testimony; 5 Espinasse 123. This is a nisi prius decision of judge Heath, but it does not appear that the decision was sanctioned by the other judges; it is a question if the law thus laid down, is not subject to "great limitations."

The proceedings before justices and judges, indeed all judicial proceedings, are open to the public; and the records of the justices, and the records of the courts, are

open to public inspection, and for public information. This is our law. Now, if this be the law, and these proceedings are public by the power of the law, and by its permission and authority, all may know and hear any judicial proceedings. Can it be a violation of the spirit of the law, then, for any one to publish, for the benefit of others, what they have the right to know or learn for themselves; provided no injuries shall be done to the common interest or welfare of the whole, or a malicious injury intended and apparent as to the person charged.

This principle, it seems to me, is sound. As a rule, however, it has exceptions, and one of these exceptions is, that if such publication be in strict accordance with law, but be published with a malicious intent, it is a libel.

The malicious intent must be judged of from the face of the libel itself—(it to me is questionable, if facts aliunde could be admitted to prove the malice.)

In an ordinary report of such proceedings as have been spoken of, no malice can exist on the part of those who publish them; but not unfrequently, it is a balm to a guilty conscience, in such cases, to seek to punish for libel, reports of such judicial proceedings. I am clearly of opinion, however, that occasional injustice, and even injury may be done to persons, by publishing such reports; but would it not be a wise law, or a supernatural system of government, that will not occasionally, and injuriously, and unintentionally, affect innocent people? Let it be plainly understood, however, that I regard as not only libellous, unlawful, but most positively injurious to the morals of the public, the pre-

senting in print to readers of all ages and sexes, the demoralizing reports of certain cases, which are brought before the criminal tribunals. Although they do contain nothing but a correct detail of proceedings in such cases, yet these details themselves, are calculated to do vast permanent injury to individuals and the public, and therefore, are unlawful and libellous.

Had the article, which is the subject of our present examination, been a plain unadorned report of the judicial proceedings in "the case of the Commonwealth *v.* Storms," under the views expressed, I should have held it a "privileged communication," and discharged the parties. Indeed, there is but one paragraph in the report which is worthy of serious notice—but that is so introduced into the article, as to give to the whole a libellous character. So far as its malicious, rather than its disinterested review of the facts of that case, are to be considered, the objectionable and libellous words are in the last paragraph but one, and are as follows: "The financiering qualities of the defendant were once known to the community, when he was cashier of the celebrated and exploded Towanda bank." This is foreign to the subject matter of the case as presented, either on the hearing before the justice, or the secondary step, on habeas corpus, and is likely on such a charge as "false pretences," so to affect the complainant, that I can but regard it as a technical libel.

It is therefore ordered, that the defendants each enter into their own recognizance, in the sum of $1000 to appear for trial.

*William A. Porter, esq.,* for commonwealth.